Osborne & Co. v. Kline.

---

D. M. OSBORNE & CO., PLAINTIFFS IN ERROR, V. JACOB KLINE, DEFENDANT IN ERROR.

1. **Answer:** NO EVIDENCE TO ESTABLISH DEFENCE: VERDICT. Where the plaintiff's cause of action is admitted by the defendant in his answer, and the defense of payment is made thereto, but there is no evidence on the trial tending to establish such defense, the court should direct the jury to bring in a verdict in favor of the plaintiff.

2. **Argument:** OPENING AND CLOSING. That party against whom judgment would be rendered in case no evidence was given by either side, has the right (and it is his duty) to open the testimony, and also the right to open and close the argument.

ERROR to the district court for Lancaster county. Tried below before POUND, J.

*L. C. Burr,* for plaintiffs in error.

*J. C. Johnston* and *J. C. Crooker,* for defendant in error.

COBB, CH. J.

This action was originally brought by D. M. Osborne & Co., plaintiffs, against Jacob Kline, defendant, on one promissory note for the sum of $54 alleged to be due and payable on the first day of January, 1882. The action was brought by appeal to the district court of Lancaster county on the 5th day of February, 1883, and petition filed in said court describing the note as above. And on the 25th day of February, 1884, plaintiffs filed in said court, in said action, a supplemental petition on another note for the sum of $53, due the first day of October, 1883.

The defendant made answer alleging payment of the said notes. For further defense he also set up in his answer that said notes were given for, and the sole consideration therefor was, the sale by the plaintiffs to the defendant of one Wheeler machine, an agricultural implement to use on his farm, for which defendant gave to plaintiffs the sum of $160, evidenced by three several notes, the second and third of which are the notes described in the petition and supplemental petition in the said cause, and all of a like description, and made payable at different times. That the first thereof was paid by said defendant, and that on or about November 10, 1880, defendant sold said machine, by and with the consent and agreement of the plaintiffs, to one William Kappa, for the same sum he had paid for it by his notes aforesaid, and that the said William Kappa thereupon made his notes for the amount due on said machine payable to the order of the plaintiffs, and delivered

the same to plaintiffs, and the plaintiffs then and there promised and agreed to deliver his said notes of July 7, 1880, to the said defendant, and discharge him therefrom in full, with allegations that said plaintiffs, taking advantage of defendant's ignorance of the English language and way of doing business, only gave him one of said notes, but retained the other two, although often requested by the defendant to deliver the same to him, yet the plaintiffs have retained said notes, etc.

The case was tried to a jury, who found and rendered their verdict in favor of the defendant. The plaintiffs bring the cause to this court on error.

The following are the errors assigned:

"1.    The verdict is contrary to the instruction of the court.

"2.    The verdict is not sustained by the evidence.

"3.    The verdict and judgment are contrary to law.

"4.    The court erred in refusing to give instructions 1, 3, 4, and 5, as requested on the part of the plaintiffs.

"5.    The court erred in allowing the defendant the opening and closing of the argument.

"6.    The court erred in giving instructions No. 1 and 2, as given by the court on its own motion."

In examining these assignments of error we will take them up in the order in which they should have been, not that in which they are presented.

The instructions, the refusal to give which constitute the fourth ground of error, are in the following words:

"1.    The jury are instructed that under the contract of agency between the plaintiffs and Henry Keefer, Mr. Keefer was not authorized to make an exchange of notes, and take the notes of said Kappa in the place of defendant's notes, and I instruct the jury that Mr. Keefer had no authority to make a novation of parties to said notes, and your verdict must be for the plaintiffs.

"3.    The jury is instructed that in this case there is no

evidence that Henry Keefer was an agent of the plaintiffs. to receive the money claimed to have been paid by the defendant to him, nor was he the agent of the plaintiffs, to receive payment of said notes, or either of them, and your verdict must be for the plaintiffs for the amount of the said notes and the interest thereon.

"4. The jury is instructed that there is no evidence that Henry Keefer was the agent of the plaintiffs to the novation of the payors to the notes sued in this action, and claimed to have taken place on the 10th day of November, 1880, in the answer of said defendant, and your verdict must be for the plaintiffs.

"5. The jury is instructed that you must find a verdict for the plaintiffs in the amount set forth in the supplemental petition."

The following instructions were given by the court on its own motion:

"1. The court instructs the jury that Henry Keefer had no authority to take the notes of one Kappa in exchange for the notes which had been given to the plaintiffs, D. M. Osborne & Co., by defendant, Jacob Kline, and if you find from the evidence that said Keefer made such exchange the plaintiffs are not bound thereby, and you will find for the plaintiffs for the full amount of the notes sued with interest according to the terms thereof, unless you further find from the evidence that the plaintiffs have ratified the acts of said Keefer in making such exchange.

"2. If you find from the evidence that said Keefer took the notes of said Kappa in exchange for the notes given to the plaintiffs by said Kline, including the notes sued on in this action, and that said Kappa paid to said Keefer the notes which he had given to him, and the plaintiffs with full knowledge that said Keefer had made such exchange received the money which Kappa had paid to Keefer, that would be a ratification of said Keefer's acts, and the plaintiffs are bound thereby, and cannot re-

cover, and you will find for the defendant. But in order
to constitute such ratification the plaintiffs must have re-
ceived such money, if they did receive it from said Keefer
with full knowledge of all the facts."

It appears from the pleadings that on the 7th day of
July, 1880, the defendant bought of the plaintiffs, through
one Henry Keefer, their local agent at Lincoln, one har-
vesting machine, at the price of $160, and gave therefor
his three promissory notes, one for fifty-three dollars, due
October 1, 1880; one for fifty-four dollars, due Jan.
1, 1882, and one for fifty-three dollars, due Jan. 1, 1883,
payable to the order of D. M. Osborne & Co., at the First
National Bank of Lincoln.

This suit was brought on the two last described of said
notes.

There was evidence introduced on the part of the de-
fendant tending to prove that some time in the fall of
1880 the witness Kappa agreed with the defendant Kline
to take the said machine off of his hands, and settle or
pay to the holders of Kline's notes a balance remaining
due on the first to fall due of said notes, and the whole of
the other two, and that on the 10th day of November of
said year Kline and Kappa went to the office of Henry
Keefer for the purpose of consummating said arrangement.
Upon stating their object to Keefer he informed them that
the notes had been sent to the bank, or to the company,
and so he could not give Kline his notes back, but that he
would take Kappa's notes, and give Kline a receipt for his
notes. That thereupon Kappa executed and delivered to
Keefer his note, payable to Keefer, for $24.68, the sup-
posed balance remaining unpaid on the first note, and his
note for $110, the supposed amount of the two other notes
and interest, and also delivered to him as collateral secur-
ity for said last mentioned note the note of one Jonathan
Krug for the same amount. That thereupon Keefer, or
some one in his office, executed and delivered to Kline his

individual receipt. This receipt having been put in evi-
dence on the trial, I copy it here:

"LINCOLN, NEB., Nov. 10, 1880.

"Received of Jacob Kline one hundred and sixty dol-
lars, amt. in full due for Wheeler machine, for two notes.
given, one due Jan. 1, 1882, for $54.00, and one due Jan.
1, 1883, for $53.00 payable to D. M. Osborne & Co.

"$160.00.                              HENRY KEEFER."

Kappa, who was sworn and examined as a witness on
the part of the defendant, testified that he had paid both
of his said notes to Henry Keefer. He produced the note
for $25.68, and filed it as an exhibit in the case, but he
did not produce the note for $110, nor was there any rea-
son given or suggested for its non-production. But
whether the said note was paid to Henry Keefer or not
there was no evidence tending to prove authority, on the
part of Keefer, to make the exchange of the said notes,
nor to receive the money called for by the two original
notes. And if he did receive it there was not a particle of
evidence that he ever paid it or any part of it over to the
plaintiffs, or that they ever received a dollar of it know-
ingly or unknowingly.

There can be no doubt then that the district court erred
in giving the two instructions, one and two, because, there
being no evidence of ratification before the jury, to instruct
them upon that branch of law, however correctly as ab-
stract propositions of law, was only to call the attention of
the jury from the evidence to that which was not in evi-
dence nor proper for their consideration.

As to the 4th point of error, the refusal of the court to
give the instructions prayed by plaintiffs: While the said
instructions were not as carefully or accurately drawn as
they might have been they were substantially correct.

There was no evidence tending to prove that Keefer
ever had authority to accept payment of either one of the

said three original notes.    But on the contrary there was evidence that he ceased to be the agent of the plaintiffs for any purpose, more than two months before the change of notes as testified to by Mr. Kappa.

At the consultation by the judges it was suggested that possibly the verdict might be sustained on the ground that Keefer having the first note in his possession and accepting of two partial payments on it from Kline, and finally exchanging the note itself with Kappa for his note for the amount of the balance remaining unpaid, would be taken as evidence of his authority to collect that note, and that his authority to collect it might be deemed as some evidence of his authority to collect or exchange the other two notes taken at the same time, and for the same consideration. But upon thorough examination of the evidence it does not appear that Keefer ever had either of the three notes in his possession after the time of taking them from Kline. He testified to sending them to the plaintiff company after taking them, and supposed that they sent them to the First National Bank for collection when they approached maturity, as was their custom.    There were two payments endorsed on the first note before the transaction of the 10th of November, but Keefer swears that neither was made to him, nor that either of the endorsements are in his handwriting.    It appears that the first of these three notes to fall due was in the hands of defendant's attorneys, and offered in evidence on the trial, but there was no evidence as to how they or the defendant obtained possession of it. In the absence of such proof certainly no presumption of authority on the part of Keefer to control the other notes could possibly arise.

From the above considerations it follows that there was no evidence before the jury even tending to establish a defense to either of the two notes sued on.    It was therefore the duty of the district court to direct a verdict for the plaintiffs.

It was never doubted that when plaintiff upon a trial fails to prove a point absolutely indispensable to his right to recover that the court should either grant a non-suit or direct a verdict for the defendant. And this rule of law is equally applicable to a case where the plaintiff's right to recover *prima facie* is established, as in the case at bar, by undisputed and indisputable evidence, and there is an entire want of evidence to sustain the defense. In such cases it is equally the duty of the court to direct a verdict for the plaintiff.

When it is clear that a finding of the jury for a certain one of the parties would be set aside for the want of evidence to sustain it, then it is trifling with the time as well as the rights of the parties, on the part of the court, to submit the case to the jury.

As to the fifth assignment, there was no error in the court's allowing the defendant's counsel to open and close the argument. Doubtless that party against whom judgment would be rendered if no evidence were introduced on either side had the right, and it was his duty, to open the testimony; and I think there can be no doubt of the rule that the party entitled to open the testimony has also the right to open and close the argument. Now in the case at bar the defendant, by his answer, admitted everything that was alleged by the plaintiffs in their petition, but plead payment. Accordingly, it was altogether unnecessary on the part of the plaintffs to introduce the notes sued on in evidence, and their doing so could not change the *status* or rights of the parties in court.

The judgment of the district court is reversed and the cause remanded for further proceedings according to law.

REVERSED AND REMANDED.

THE other judges concur.